## STATE *v.* AVERY.

The provisions of the Revised Statutes (ch. 219, sec. 12) are designed to restrain cruelty to animals, and the offense may be committed by a malicious injury of one's own horse or other animal; and therefore malice toward the owner is not a necessary ingredient of the offense.

On the trial of an indictment for maliciously beating a horse, the evidence tended to prove a beating during a long time in the afternoon, with occasional interruptions of a few minutes at a time;—*Held,* that whether this was one continued beating, or several and distinct beatings, was a question of fact for the jury, under proper instructions.

The testimony of a witness that he knew the horse, and that he always drove well, unless harassed with the whip, is not open to the objection that it is but a mere opinion. So also as to the statement of a witness that he saw nothing vicious or obstinate in the horse at the time of the beating. Nor is a statement of the apparent effect, at the time of the blows upon the horse, objectionable.

A beating for the purpose of training or discipline, although unreasonably severe, does not constitute an offense under this statute, so long as it is in good faith administered for such purpose.

A ruling by the judge in the course of the trial as to what constitutes the offense, to which no exception was taken, is no ground for disturbing the verdict, although the

ruling was erroneous, unless from the ambiguity of the charge the court could see that the jury were likely to be misled by such ruling.

The intoxication of the respondent at the time of the alleged offense, does not, as matter of law, disprove malice.

THIS was an indictment, which alleged substantially that the respondent at, &c., on, &c., did willfully, maliciously and cruelly beat and wound one horse, of the value of $100, then and there being in his possession and keeping, &c. The defendant moved to quash the indictment, but the court overruled the motion, and the respondent excepted.

The testimony tended to show that in the afternoon of the 20th of July, 1861, the defendant was driving his own horse in a gig-wagon, in and about Campton village, for a considerable space of time, and while so driving he continued, although with intervals of a few minutes, to whip his horse severely. The respondent's counsel objected that it appeared by the testimony that the whipping had ceased, and that no evidence of any whipping afterward should be received; but the court admitted the evidence, subject to exception, as tending to show one continued beating; and it was left to the jury, with instructions which were not excepted to, that they should lay out of consideration any testimony that they should find to relate to subsequent and distinct beatings.

In the course of the trial one Batchelder was permitted to testify that he knew the horse, and that he drove like a pleasant and well disposed horse, unless when harassed with the whip; and to this the defendant excepted, as matter of opinion.

Another witness was also allowed to testify that at the time of the alleged beating he saw no viciousness or obstinacy in the horse; to which the defendant excepted, as incompetent, and as matter of opinion.

Another witness was allowed, against the defendant's exception, to testify how the blows appeared to affect the horse.

While the trial was in progress the court stated that proof that the beating was for a justifiable purpose would be a good defense, unless carried beyond a reasonable degree.

The respondent contended, and offered evidence tending to prove that he was a dealer in young horses, and a breaker and trainer of such animals, and that the act complained of was done by him solely for the purpose of correcting a vicious habit of the horse; and he claimed that if such was the fact he could not be convicted, even though the jury should find that the whipping was more severe than was necessary for that purpose. The respondent also asked the court to charge the jury, that in order to find the respondent guilty they must be satisfied beyond a reasonable doubt that the act complained of was done out of a spirit of wanton cruelty, and that it was not done with any lawful or proper purpose or intent; and that, if, upon all the evidence, the jury should find that the beating of the horse, for which the respondent was on trial, was done by him for the purpose of correcting a fault of the horse, the respondent could not be convicted.

The court did not charge in those terms, but did instruct the

jury that the act charged must be both willful and malicious; not a matter of accident or of carelessness, and not an act done for a proper purpose, or a purpose supposed to be proper, for the benefit of the animal, or of the owner; for such acts, though they may be of great severity, as some surgical operations, or severe beating in breaking horses, would not be malicious; but that malice is not limited to ill will to an animal, or its owner, or to wanton cruelty; but the act will be malicious if it results from any bad or evil motive, as from cruelty of disposition, from violent passion, a design to give pain to others, or a determination to show that he will do what he pleases with his own property, without regard to the remonstrances of others. In judging of the question of malicious intent the jury would not consider whether the defendant's method of training or breaking horses by beating, and in some cases by severe beating, was good or bad, or better or worse than some other, for this was of no consequence. If the beating in question was given for the single purpose of breaking the animal of a vicious habit, that was a complete answer to any charge of malice, if he did not go beyond his own rule; but the jury might inquire if the beating was aggravated from the influence of any evil motive, as from violent passion at the interference or remonstrances of others against his severity, for any excess thus caused should be regarded as malicious.

The State's counsel offered evidence tending to prove that the respondent was intoxicated at the time of the act complained of. The defendant contended, and asked the court to hold, that he could not, if intoxicated, have the willful and malicious intent which is essential to the commission of the offense charged. The court declined, and instructed the jury that drunkenness is neither an excuse nor an apology for any offense, but is rather an aggravation, and the evidence which proves malicious intention is not necessarily disproved, or weakened, by showing that he was drunk, but may be strengthened, since the excitement of ardent spirits often increases ill-nature; but the jury would judge of the intention upon all the evidence.

The jury found the defendant guilty, and he moved that the verdict be set aside and a new trial granted, by reason of said exceptions.

BELLOWS, J. The motion to quash the indictment was properly refused. By the Revised Statutes (ch. 215, sec. 10; Comp. Stat. 229, sec. 11), it is enacted that, "if any person shall willfully and maliciously kill, maim, wound, poison or disfigure any horse, cattle, sheep or swine of another, with intent to injure their owner, or any other person, he shall be punished by confinement to hard labor not less than one year nor more than three years, or by fine not exceeding $1000, and imprisonment in the common jail not exceeding one year." This is correctly classed among offenses against property, which were recognized and punished by acts of parliament as early as the time of Henry VIII; much extended by the act of 22 and 23 Charles II, ch. 7. Both of these acts, like our

own laws, distinctly relate to malicious injuries to the cattle of others. 2 East Cr. L. 1070. The offense punished by the latter act was one committed secretly and in the night time.

By act of George I, ch. 22, called the Black Act, which seems to have been a revising of the former statutes, the unlawful and malicious killing, maiming or wounding of any cattle was made felony, without benefit of clergy; and under this act it was held that the malice must have been directed against the owner of the cattle. 2 East Cr. L. 1072. All this legislation was clearly to punish malicious injuries to the property of others, and was correctly classed as offenses against property. On the other hand the Revised Statutes (ch. 219, sec. 12), provide that "if any person shall willfully and maliciously kill, maim, beat or wound any horse, cattle, sheep or swine, he shall be punished by fine not exceeding $100, or by imprisonment not exceeding ninety days, or by both of such punishments." This and section 10 of chapter 215 of the Revised Statutes, before quoted, are substantial reënactments of sections 12 and 13 of the law of 1829 (ed. 1830, p. 138), and they are appropriately classed in the Revised Statutes: one as offenses against property, and the other as cruelty to animals. To constitute the first there must be an intent to injure the owner; and this is made so in express terms; but no such provision is found in the other.

If, as contended by the defendant's counsel, the offense in the latter section can not be committed except to the cattle of another, it involves the absurdity of providing punishments widely differing in degree for the same offense. But the other construction gives full effect to both sections, and we think it the correct one; and therefore the decision under the English statutes, cited by the counsel, do not apply.

One of the main questions is, whether evidence was admitted of more than one beating. It would seem that the evidence went to prove that the respondent beat his horse quite a long time, although with intervals of a few minutes, and the judge who tried the cause was of the opinion that the evidence tended to show a continued beating, or that the jury might so find; and upon a careful examination of the testimony we are disposed to concur with him. No objection, then, being made to the instructions on that point, it furnishes no reason for disturbing the verdict.

The admission of the testimony of Bachelder that the horse always drove well, unless harassed with the whip, is nothing more than evidence that he was kind and manageable, and is not, we think, a matter of opinion but of fact. Whether testimony as to his ordinary character was admissible or not, is not made a question by the case; but the objection is, that it was but matter of opinion. See *Mills* v. *Quimby*, 31 N. H. 489; *Spear* v. *Richardson*, 34 N. H. 430.

So in relation to the question to Mrs. Foss, whether she saw any thing vicious or obstinate in the horse; and the court might very properly decline to make any distinction in this respect founded on the difference of sex in the witnesses.

So also as to the question relative to the apparent effect of the

blows upon the horse, which may well be regarded as calling for a statement of facts whether they caused the horse to start, or whether they left marks of such blows; and the form of this question is not material.

The instructions prayed for were substantially given, except upon the point that the jury must find that the acts complained of were done out of a spirit of wanton cruelty; instead of which the court instructed the jury that malice was not limited to ill-will to an animal, or its owner, or to wanton cruelty; but the act will be malicious if it results from any bad or evil motive; as from cruelty of disposition, from violent passion, a design to give pain to others, or a determination to show that he will do what he will with his own property, without regard to the remonstrances of others. Of these instructions we think the defendant had no cause to complain. If the beating was wrongful, because cruel and severe, and was done intentionally, and without just cause or excuse, the law would regard it as malicious; and if, therefore, it was done from any of the motives enumerated by the judge, malice would be implied. On the general question of malice see *Bromage* v. *Prosser*, 4 B. & C. 247; *Wills* v. *Noyes*, 12 Pick. 324, and cases cited; *Commonwealth* v. *Snelling*, 15 Pick. 340; *Commonwealth* v. *Gorham*, 9 Met. 105; *Knight* v. *Foster*, 39 N. H. 582.

The law in question was designed to restrain the exercise of cruelty to animals, and is founded upon a high moral principle, which denounces the wanton and unnecessary infliction of pain, even upon animals created for the use of man, as contrary alike to the principles of christianity and the spirit of the age. At the same time, there is no purpose to interfere with the infliction of such chastisement as may be necessary for the training or discipline by which such animals are made useful. The distinction is between that chastisement which is really administered for purposes of training and discipline, and the beating and needless infliction of pain, which is dictated by a cruel disposition; by violent passions, a spirit of revenge, or reckless indifference to the sufferings of others. If resorted to in good faith and for a proper purpose, it will not be necessarily malicious because it may be deemed to be excessive; but the undue severity should be carefully weighed by the jury in determining whether it was not in fact dictated by a malevolent spirit, and not by any justifiable motive. It is not, however, like the case of a parent or master, who has the right to inflict only moderate and reasonable chastisement, and is liable to punishment if he exceed it; but, under the law now in question, there is no liability for such excess unless it be found to be malicious. At the same time it must be considered that the chastisement which at first may be inflicted with a lawful motive, may, in its progress, engender such brutal and malignant passions as in the end to change entirely its character, and render the beating malicious within the meaning of the act; and this should operate as a salutary admonition to keep guard over the passions, lest the beating which, although always, or at least generally, of questionable utility, the law will excuse, may degenerate into an unmanly and malicious crime.

We are satisfied, then, that there was no error in declining to charge the jury that they must find that the act was done out of a spirit of wanton cruelty; for the malice, upon the principles we have stated, can not be so limited.

It appears that in the course of the trial a statement was made by the court, to the effect that proof that the beating was for a justifiable purpose would be a good defense, unless carried beyond a reasonable degree. As no exception was taken to it, it is quite clear that it does not furnish cause for disturbing the verdict. It would be so, even if it had been part of the charge, and not excepted to. If, however, the instructions which were given and excepted to were ambiguous, and, when considered in connection with this statement, were likely to mislead the jury, there ought to be a new trial.

It appears that the respondent contended that the beating was solely for the purpose of correcting a vicious habit of the horse, and even if more severe than was necessary for that purpose, still the offense was not committed; and it may be understood that the court was requested so to instruct the jury. The court, however, did not in these terms instruct the jury, but did instruct them that the act must be both willful and malicious, and not an act done for a proper purpose, or a purpose supposed to be proper, for the benefit of the animal or of the owner; for such acts, though they might be of great severity, as some surgical operations, or severe beating in breaking horses, would not be malicious; and further, in judging of the question of malicious intent the jury would not consider whether the defendant's method of training or breaking horses by beating, and in some cases by severe beating, was good or bad, or better or worse, than some other; for this was of no consequence. If the beating was for the single purpose of breaking the animal of a vicious habit, that was a complete answer to any charge of malice, if he did not go beyond his own rule; but the jury might inquire if the beating was aggravated from the influence of any evil motive, as from violent passion, and at the interference and remonstrance of others, against his severity; for any excess thus caused should be regarded as malicious.

Upon a careful consideration of this part of the charge we think it very distinctly laid down that if the beating was solely for the purpose of training, however severe it might be, it would not be malicious, within the meaning of the statute, and therefore it would be no offense; but if the beating was carried beyond the respondent's own rule, and was aggravated by the influence of any evil motive, the excess thus caused would be malicious. And this we think accords substantially with the respondent's request, and also with the views which we have before expressed. Nor do we think that there was any thing calculated to mislead the jury, even considered in connection with the previous remark of the court. On the contrary, we think the distinction was plainly marked, and in language not likely to be misunderstood. Neither is there any thing in the character of the case, as reported by the judge, that tends to show that the jury were in fact misled. Indeed, the jury

were very explicitly told that the act must be both willful and malicious, and what would constitute malice was so accurately and plainly stated that we think the jury could not but understand it.

It is urged by the respondent's counsel that the different views expressed by the judge, in different stages of the trial, upon a material point, is of itself cause of exception; but we think that this comes within the well settled doctrine of our courts, as applied to the admission of incompetent testimony, where the jury are afterward directed to disregard it; in which case it is held that the admission furnishes no ground for a new trial, unless there is reason to believe that the evidence improperly influenced the verdict. *Hamblett* v. *Hamblett*, 6 N. H. 334; *Deerfield* v. *Northwood*, 10 N. H. 269. And we think that the danger in cases of this class would be much greater than in cases like the one before us.

The court we think was right in declining to instruct the jury, as requested by the defendant, that if intoxicated the respondent could not have the willful, malicious intent which is essential to the commission of the offense charged. Whether he had such an intent or not was a question for the jury, and was rightfully left to them upon all the evidence; and the judge was right in saying that the evidence was not necessarily weakened by showing that he was drunk. There may be cases where the intoxication of the respondent may be weighed, in determining whether the malicious intent existed; as in *Rex* v. *Thomas*, 7 C. & P. 817; but no case goes the length of what was requested in this case. *Rex* v. *Carrol*, 7 C. & P. 145; *Rex* v. *Meakin*, 7 C. & P. 297; Whart. Cr. L. 46, 47. But here the request was to instruct the jury, as matter of course, that the respondent, if intoxicated, could not have the willful and malicious intent essential to the commission of the offense.

There must, therefore, be

*Judgment on the verdict.*

