**THE PEOPLE, Plaintiff**

v.

**OLIVER HEADLEY, Defendant**

## District Court of the Virgin Islands

Frederiksted Sub-Judicial District
St. Croix

### September 27, 1927

127

**WILLIAMS,** *Judge*

The defendant, with several others, was, on the 9th day of June, 1927, engaged in ploughing with an ox team comprised of several yokes of oxen; one yoke being made up of an old ox, and an ox just broken or being broken, which particular yoke a young boy endeavored to release. Instead of taking the young ox out first, he released the old one, thereby causing considerable difficulty in getting the young one unyoked, as he became restless, if not somewhat obstreperous. The boy then called the ploughman — the defendant — to assist him in releasing the ox. It appears that the ploughman was no more successful than the boy, and he thereupon called to the boy to hand him his stick — a stick about a

yard long, used in directing pairs of oxen in their work — which the boy did, with which he struck the young ox across the face, putting out its left eye. It appears that he was on the left side of the ox facing the yoke, with his left hand on the yoke, and that he struck the ox an over-hand blow, that is, his right arm had to pass over his left arm in order to strike the ox on the forehead. It was understood at the trial that a light blow would be sufficient to accomplish the purpose of making the ox draw back in the yoke, in order to allow the yoke to be released from its neck. A severe blow was not at all necessary. In the posture in which the defendant was it is not readily understandable how the incident in question could have occurred, unless he had used the stick in a reckless manner. It is probable that he was very much irritated and vexed at the conduct of the animal and his inability to release him directly after the boy had called for his assistance, and, being thus impassioned, he gave vent to his feelings. Many times it is not possible to ascertain the mental operations of a person, except by his acts at the time. The situation reveals sufficient circumstances to make the conclusion reasonably necessary that defendant was sufficiently irritated and vexed to retaliate against the ox, by viciously striking him with his stick.

The paragraph in 2 Cyc. 344 dealing with "Wilfulness, Wantonness and Intent" as is follows: "Where it is expressly or impliedly required that the prohibited act should have been done wilfully or wantonly, or with an intent to ill-use the animal, or subject it to unnecessary pain and suffering, it must appear that the act was intentional as distinguished from accidental or involuntary, or that the accused was actuated with a malevolent purpose or reckless disregard of the consequences. The evil motive need not be actual, however. If the act

is of such a character as to evince an absence of proper regard for animal life or feelings the intention will be presumed and the necessary motive supplied by construction. An intent to cause pain and suffering is immaterial when such elements are unnecessary to constitute the offense, provided the conduct of the defendant was wilful and not accidental." This paragraph is practically identical with the one in 3 Corpus Juris 68, dealing with the same subject. "Guilt of the offense does not depend on whether or not the accused though he was not wilfully or unnecessarily cruel, but whether he intentionally and knowingly did acts which were plainly of a nature to inflict unnecessary pain, and so were unnecessarily cruel." Com. v. Magoon, 172 Mass. 214, 51 N.E. 1082.

█ The wilful or wanton spirit which accompanies the commission of an act may be shown by proof of acts or conduct which would be sufficient to satisfy the jury that the offense was knowingly committed, or of the wicked intent of the accused. Direct proof is not required and is not all times possible of proof, therefore it is proper to employ all inferences which may be drawn from facts or circumstances shown in the case. 2 Cyc. 350, 351.

█-█ In the case of State v. Avery, 44 N.H. 392, 396, quoted at page 68 of 3 Corpus Juris, the court rather thoroughly discussed the philosophy actuating and underlying statutes in this class of case, as follows: "The Court instructed the jury that malice was not limited to ill-will to an animal, or its owner, or to wanton cruelty; but the act will be malicious if it results from any bad or evil motive; as from cruelty of disposition, from violent passion, a design to give pain to others, or a determination to show that he will do what he will with his own property, without regard to

the remonstrances of others. Of these instructions we think the defendant had no cause to complain. . . . The law in question was designed to restrain the exercise of cruelty to animals, and is founded upon a high moral principle, which denounces the wanton and unnecessary infliction of pain, even upon animals created for the use of man, as contrary alike to the principles of christianity and the spirit of the age. At the same time, there is no purpose to interfere with the infliction of such chastisement as may be necessary for the training or discipline by which such animals are made useful. The distinction is between that chastisement which is really administered for purposes of training and discipline, and the beating and needless infliction of pain which is dictated by a cruel disposition, by violent passion, a spirit of revenge, or reckless indifference to the sufferings of others. If resorted to in good faith and for a proper purpose, it will not be necessarily malicious because it may be deemed to be excessive; but the undue severity should be carefully weighed by the jury in determining whether it was not in fact dictated by a malevolent spirit, and not by any justifiable motive. It is not, however, like the case of a parent or master, who has the right to inflict only moderate and reasonable chastisement, and is liable to punishment if he exceeds it; but, under the law now in question, there is no liability for such excess unless it be found to be malicious. At the same time it must be considered that the chastisement which at first may be inflicted with a lawful motive, may, in its progress, engender such brutal and malignant passions as in the end to change entirely its character, and render the beating malicious within the meaning of the act; and this should operate as a salutary admonition to keep guard over the passions, lest the beating which, although always, or at least generally, of

131

questionable utility, the law will excuse, may degenerate into an unmanly and malicious crime. We are satisfied, then, that there was no error in declining to charge the jury that they must find that the act was done out of a spirit of wanton cruelty; for the malice, upon the principles we have stated, can not be so limited."

The principle controlling the construction of such legislation as here involved, and set forth in 2 Cyc. 341, is thus: "Acts having for their object the prevention of cruelty to animals should be construed so as to effectuate the legislative intention and attain the practical object of such laws, so far as the rules of construction may warrant without involving absurd consequences." In this case, as in other cases, the defendant should be held responsible for the natural and probable consequences of his act. Many cases of recklessness, wantonness and wilfulness in dealing with animals do not come to light because there are no physical evidences to be found on them when they are brought under the observation of responsible persons. It is only now and again that the results of passion and vindictiveness reveal them. If this severe blow had not reached the eye of the ox there would have been no evidence of its delivery, because no impress would have been left upon its horns or head, in all probability. The blow would have been a vicious blow, if delivered with passion, and even though it did not actually cause any permanent evil consequences. While I am not prepared to say that such injuries as the one in hand would invoke the doctrine of res ipsa loquitur, it is one of the elements to be taken into consideration in determining the main question. While there is no intention to say that reasonable chastisement might not be permitted, when inflicted with due regard to the feelings and safety of the animal, acts which seem to be done without regard or any solicitude at all for the safety

of the animal cannot be said to be guiltless, under section 63, chapter 10, Title IV, of the Code (1921; 14 V.I.C. § 181). While it is generally known that such animals as here involved are very provocative and cause great irritation and annoyance some times, the passion thus engendered may not be wreaked in a reckless and wanton manner upon the offending animal. They are not supposed to be reasoning animals and ought not to be brutalized as a result of their unreasoning action. Man, in dealing with them, is required to exercise that control over his passions which the reason with which he has been endowed by the Creator makes possible. While the provocation may at times seem to transcend all human endurance — such as the seemingly innate stubbornness of an ox — the chastisement must be inflicted in a manner consonant with the safety of the members thereof. In the instant case it would seem that the blow was delivered in a reckless and careless manner, with utter disregard of the possibilities of injury to be caused thereby. According to the understanding at the hearing he could have accomplished the same purpose by a slight blow — which could have in no wise inflicted any serious injury. It is this sort of direction, and no other, that may be given by the use of sticks or other instruments of chastisement. It cannot be reasonably said, from the testimony as adduced, that the defendant was using that degree of care and caution in dealing with the animal that he was handling, as the law requires. Therefore, it seems to me, that the conclusions heretofore reached, and set forth in formal fashion, are reasonable, if the statute is to be reasonably effective and its spirit observed.